1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8
Eric Lee Flanders,                    )        Case No. CV 04-2075-PHX-SMM (JM)
9                                      )
            Petitioner,               )        **REPORT AND RECOMMENDATION**
10                                     )
v.                                     )
11                                     )
Ernest Trujillo, et al.,               )
12                                     )
            Respondents.               )
13 _____)

14          Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus [Docket

15 No. 1], filed pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the

16 United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter

17 was referred to the Magistrate Judge for report and recommendation.  As explained below,

18 the Magistrate Judge recommends that the District Court, after an independent review of the

19 record, dismiss the Petition with prejudice.

20 **I.      FACTUAL AND PROCEDURAL BACKGROUND**

21          By Indictment filed December 21, 1999, and numbered CR 99-18091, the State

22 charged Petitioner with one count each of Theft of Means of Transportation (Count 1),

23 Unlawful Flight from Law Enforcement Vehicle (Count 2), Resisting Arrest (Count 3), and

24 Aggravated Assault on a Police Officer (Count 4).  (Ex. A.)[1]

25

26          The Arizona Court of Appeals summarized the facts underlying the indictment as

27 _____

28      [1] Unless otherwise noted, all referenced exhibits are those attached to Respondent's Answer to
Petition for Writ of Habeas Corpus.

follows:

> On December 13, 1999, at approximately 4:00 a.m., Serafin Cabrera started his van in preparation for his drive to work. In the time it then took Cabrera to get out of his van to retrieve his lunch from his wife, a man got inside the van and drove away. Cabrera's wife called the police, and Phoenix Police Officer Derrick Geisel, who was on patrol in his helicopter, responded.

> Officer Geisel spotted the van near 51st Avenue and McDowell Road in Phoenix. He alerted the patrol officers to the location of the van, and together they followed it into a rural areas. One of the patrol officers, Officer David Norman, had to travel at speeds of approximately 100 miles per hour to keep up with the van.

> Near 91st Avenue and Broadway, the van turned onto a dirt road traveled about a mile and stopped. Officer Geisel saw an Anglo man wearing a light-blue jacket and jeans jump out of the van and run south toward a canal. Officer Geisel lost track of the man for a few seconds after the man ran under trees by a farmhouse. However, based on information from Officer Geisel, Officer Norman approached the trees, identified himself as a police officer and commanded the man to come out. Then, while crossing a canal, Officer Norman saw the man hiding underneath a wooden plank that was lying across the canal. The man started to run but was caught by police officers and taken into custody. The man was wearing a denim jacket and jeans.

(Exhibit L, pp. 1-2.)

The State also filed an Allegation of Historical Priors, alleging that Petitioner had four prior felony convictions and that he committed the offenses while on felony release. (Exhibits C & D.) On May 23, 2000, the court, upon the State's motion, dismissed without prejudice Count 3 (Resisting Arrest) and Count 4 (Aggravated Assault) of the indictment. (Exhibit B.)

The trial court found Petitioner indigent and appointed defense counsel. (Exhibit E.) On May 25, 2000, the trial commenced on Counts 1 and 2 of the Indictment. (Exhibit F.) Petitioner was absent the first day of trial, but was arrested and taken into that night by Officer Norman for trespassing and possession of drug paraphernalia. (Exhibit L, p. 3) Petitioner was read his Miranda warnings and indicated that he understood them. (*Id.*) Petitioner then made mention to Officer Norman that the officer had been upset with Petitioner the night of the previous arrest for theft and unlawful flight. (*Id.*) Officer Norman

1   agreed that he had been upset and indicated that Petitioner was "one hell of a driver." (*Id.*)

2   Petitioner responded, "Yeah, I used to race off road." (*Id.*)  Petitioner then asked Officer

3   Norman why the officer had been so upset, to which Officer Norman relied that it was

4   because he had run into a barbed-wire fence and torn his uniform.  Petitioner responded,

5   "Yeah, I ran into that same barbed-wire fence." (*Id.*)

6        The trial court conducted a voluntariness hearing to determine whether Petitioner's

7   statement to Officer Norman the night of the second arrest were admissible.  Petitioner

8   argued that his statements were not admissible because the Miranda warnings read at the time

9   of the arrest for trespassing were not sufficient as to the statements made about the night of

10  the previous arrest. (*Id.*)  The court found the statements to be voluntary and that they were

11  "made in full compliance with Miranda." (*Id.*, p. 4.)

12       Officer Norman testified at trial concerning Petitioner's statements the night of his

13  trespassing arrest. (*Id.*)  Petitioner testified that he had not stolen the van but that he had

14  been walking from his parents' house to his sister's boyfriend's house when he had seen the

15  lights from the helicopter and the police cars. (*Id.*)  He further testified that he had hidden

16  in the canal because he was in violation of parole and thought that the police were searching

17  for him for that reason. (*Id.*)

18       On May 31, 2000, the jury found Petitioner guilty on both Count 1 (Theft of Means

19  of Transportation) and Count 2 (Unlawful Flight from Law Enforcement Vehicle). (Exhibit

20  F, p. 3.)  On June 2, 2000, the court found that Petitioner had been convicted on three prior

21  felony offenses. (Exhibit G.)  On July 7, 2000, the court sentenced Petitioner to 11.25 years

22  imprisonment for Count 1, and 5 years imprisonment for Count 2. (Exhibit H.)  The court

23  ordered that the sentence be served concurrently. (*Id.*)

24       On July 12, 2000, Petitioner filed a timely Notice of Appeal. (Exhibit I.)  In his

25  Opening Brief filed in the Arizona Court of Appeals, Petitioner, who was represented by

26  counsel, framed the issues as follows:

27            Issue One

28            Officer Norman interrogated [Petitioner] regarding this

- 3 -

case after his arrest on unrelated charges, and after [Petitioner] had been indicted for, and appointed counsel in, this case. [Petitioner] then made incriminating statements regarding this case that contradicted his previous, exculpatory statements. Should [Petitioner] receive a new trial because this violated his federal and Arizona constitutional rights to counsel?

Issue Two

Should [Petitioner] receive a new trial because the incriminating statements that he made to Officer Norman regarding this case, which were made after his arrest for unrelated charges, were involuntary?

(Exhibit J, p. 1.)  Addressing Issue One, the Court of Appeals determined it had not been raised at trial and was therefore waived absent fundamental error.  (Exhibit L, p. 5.)  The court proceeded to find that admission of the disputed statements as harmless in light of other evidence that Petitioner was in fact the driver of the van.  (*Id.*, pp. 5-6.) Issue Two was resolved similarly, with the court finding that any error was harmless in light of the other evidence presented at trial.  (*Id.*, p. 6.)  On August 23, 2001, the Court of Appeals, noting that neither a motion for reconsideration nor a petition for review had been filed and that the time for doing so had expired, issued its order and mandate.  (Exhibit M.)

On July 2, 2001, Petitioner filed a timely notice of post-conviction relief ("PCR"). (Exhibit N.)  On July 17, 2001, the court found Petitioner indigent and appointed PCR counsel. (Exhibit O.)  On October 24, 2001, Petitioner's PCR counsel filed a notice with the court indicating that she had "corresponded with petitioner, conferred with former trial counsel, and reviewed the court's file, the opening and answering appellate briefs, and all relevant transcripts," but was "unable to find a tenable issue to submit to the court pursuant to Rule 32 . . ." and would not be filing a petition for PCR.  (Exhibit P.)

On November 30, 2001, Petitioner filed a *pro se* Supplemental Petition for Post-Conviction Relief.  (Exhibit Q.)  In response, on December 28, 2001, the State filed a Motion to Dismiss Post-Conviction Relief Proceedings Without Prejudice based on Petitioner's failure to certify pursuant to Rule 32.5 of the Arizona Rules of Criminal Procedure that the PCR petition included every ground known to him for vacating or otherwise changing his

- 4 -

1   judgment or sentence. (Exhibit R.) Petitioner opposed the motion and requested sanctions.

2   (Exhibit S.) The trial court ordered Petitioner to submit the required certification or face

3   dismissal of the petition. (Exhibit T.) On February 19, 2002, Petitioner filed the required

4   Rule 32.5 certification "under duress." (Exhibit U.) The trial court did not find the

5   "certification filed under duress to comport with the spirit and letter of Rule 32.5," and

6   granted the State's motion to dismiss the petition without prejudice. (Exhibit V.) Then, on

7   March 22, 2002, Petitioner filed a Supplemental Petition for Post-Conviction Relief (Exhibit

8   W), which the court denied as moot based on the dismissal of Petitioner's previous petition

9   (Exhibit X). Petitioner then submitted a Request for Judicial Notice/Request for

10  Rehearing/Review of the March 22, 2002 order, noting that the dismissal was without

11  prejudice and requesting that the court accept the Supplemental Petition for filing. (Exhibit

12  Y.) The trial court denied the request without comment. (Exhibit Z.)

13          Petitioner filed a Petition for Review of the trial court's dismissal of his PCR petition.

14  (Exhibit AA.) The State filed response and Petitioner replied. (Exhibits BB & CC.) The

15  Court of Appeals found that Petitioner's Rule 32.5 certification complied with the rule's

16  requirements even though filed "under duress." (Exhibit DD, p. 1.) On April 29, 2003, the

17  Court of Appeals issued the Order and Mandate reinstating the petition for PCR. (Exhibit

18  EE.) Accordingly, the trial court accepted Petitioner's February 8, 2002 verification and

19  reinstated his petition for PCR. (Exhibit FF.)

20          In the petition for PCR, Petitioner raised numerous claims of ineffective assistance

21  of counsel and also alleged that the trial court erroneously instructed the jury during voir dire.

22  (Exhibit Q.) On June 30, 2003, the State filed a response to Petitioner's petition for PCR.

23  (Exhibit GG.) On July 10, 2003, Petitioner filed his reply. (Exhibit HH.) The trial court

24  held that Petitioner's did not present a colorable claim for post-conviction relief, found he

25  was not entitled to a hearing, and summarily dismissed the petition. (Exhibit II.)

26          Petitioner sought review of the decision at the Court of Appeals and claimed that he

27  was:

28          1.      Denied effective assistance of trial counsel;

2.      Denied access to exculpatory evidence;

3.      Denied a fair trial by the court due to its failure to inform him of counsel's ineffective assistance;

4.      Denied a fair trial due to the court's improper jury instruction;

5.      Denied a fair trial because counsel did not inform him when waiving his constitutional rights;

6.      Denied a fair trial because his trial and appellate counsel failed to object to improper jury instructions.

(Exhibit JJ, pp. 2-3.)  The State responded to the Petition for Review (Exhibit KK), and Petitioner replied (Exhibit LL.).  The Court of Appeals considered the petition and denied review.  (Exhibit MM.)  Petitioner did not seek review from the Arizona Supreme Court. (Exhibit NN, p. 3.)

On October 4, 2004, Petitioner filed the instant Petition for Writ of Habeas Corpus. (Exhibit NN.)  He has identified seven grounds (many of which overlap) for relief:

1.      The court erroneously instructed the jury during voir dire;

2.      He was denied of effective assistance of counsel at trial;

3.      He was denied of his right to counsel during questioning;

4.      The court erroneously admitted involuntary statements at trial;

5.      The trial court failed to take corrective action to insure effective assistance of counsel;

6.      He was denied effective assistance of counsel in preparing for trial and at trial; and

7.      He was denied effective assistance of trial and appellate counsel.

(*Id.*, pp. 5-11.)  Petitioner alleges that each of these grounds violated his "due process, equal protection, fourth, sixth, fourteenth amendment rights, [and] state created liberty interests." (*Id.*)

## II.     LEGAL DISCUSSION

### A.     The Petition is timely under the AEDPA

The writ of habeas corpus affords relief to persons in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). The petition must be filed within the applicable statute of limitations or it will be dismissed. The statute of limitations was created by the Antiterrorism and Effective Death Penalty Act (AEDPA) which reads in pertinent part as follows:

> (1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>     (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> ***
>
> (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §§ 2244(d)(1)(A) & (d)(2).

Under 28 U.S.C. § 2244(d)(2), the statute of limitations on Petitioner's federal habeas petition was tolled while he completed "one full round" of state collateral review. *Carey v. Saffold*, 536 U.S. 214, 222 (2002). Petitioner's state conviction became final on August 23, 2001, the date on which the Arizona Court of Appeals filed its order and mandate. (Exhibit M.) However, Petitioner had previously, on July 2, 2001, filed a notice of post-conviction relief, thereby tolling the one-year statute of limitation. (Exhibit N.) The Arizona Court of Appeals denied Petitioner's PCR petition on August 5, 2004, and the statute remained tolled for an additional 30 days until the expiration of the time for filing a petition in the Arizona Supreme Court. (Exhibit MM.) Accordingly, Petitioner had one year from September 5, 2004 within which to timely file his federal Petition for Writ of Habeas Corpus. The petition was filed on October 4, 2004, and is therefore timely.

## B.    Exhaustion of State Remedies

A state prisoner must exhaust the available state remedies before a federal court may consider the merits of his habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999). Exhaustion occurs either when a claim has

1   been fairly presented to the highest state court, *Picard v. Connor*, 404 U.S. 270, 275 (1971),

2   or by establishing that a claim has been procedurally defaulted and that no state remedies

3   remain available, *Reed v. Ross*, 468 U.S. 1, 11 (1984).

4        Exhaustion requires that a habeas petitioner present the substance of his claims to the

5   state courts in order to give them a "fair opportunity to act" upon these claims.  *See*

6   *O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).  A claim has been "fairly presented" if the

7   petitioner has described the operative facts and legal theories on which the claim is based.

8   *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44 F.3d 1396, 1403 (9th Cir.

9   1995).  The operative facts must be presented in the appropriate context to satisfy the

10  exhaustion requirement.  The fair presentation requirement is not satisfied, for example,

11  when a claim is presented in state court in a procedural context in which its merits will not

12  be considered in the absence of special circumstances.  *Castille*, 489 U.S. at 351, 109 S.Ct.

13  at 1060.  An exact correlation of the claims in both state and federal court is not required.

14  *Rice,* 44 F.3d at 1403.  The substance of the federal claim, however, must have been fairly

15  presented to the state courts.  *Chacon v. Wood*, 36 F.3d 1459, 1467 (9th Cir. 1994) (citations

16  omitted).

17       A petitioner may also exhaust his claims by either showing that a state court found his

18  claims defaulted on procedural grounds or, if he never presented his claims in any forum, that

19  no state remedies remain available to him.  *See Jackson v. Cupp*, 693 F.2d 867, 869 (9th Cir.

20  1982).  "To exhaust one's state court remedies in Arizona, a petitioner must first raise the

21  claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction

22  relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then

23  present his claims to the Arizona Court of Appeals.  *See Swoopes v. Sublett,* 196 F.3d 1008,

24  1010 (9th Cir. 1999).

25                    **1.    Petitioner's claims are exhausted even though**
                            **he did not present the claims to the Arizona**
26                          **Supreme Court.**

27       Respondents initially contend that Petitioner did not exhaust any of his claims because

28  he never sought review from the Arizona Supreme Court.  *Answer*, pp. 15-16.  In explaining

1  why he did not petition the Arizona Supreme Court, Petitioner cites *Swoopes v. Sublett,* 196

2  F.3d 1008 (9th Cir. 1999).  In *Swoopes*, the Ninth Circuit held that, in cases not carrying a life

3  sentence or the death penalty, "claims of Arizona state prisoners are exhausted for purposes

4  of federal habeas once the Arizona Court of Appeals has ruled on them." *Swoopes*, 196 F.3d

5  at 1010.  There is no dispute that Petitioner met the exhaustion requirements, at least insofar

6  as the claims raised in his respective appeals, described in *Swoopes* by appealing the trial

7  court's adverse ruling on his PCR petition to the Arizona Court of Appeals.  However,

8  Respondents submit that this was insufficient under the United States Supreme Court's

9  decision in  *Baldwin v. Reese*, 541 U.S. 27 (2004).

10         In *Baldwin*, which was a case appealed from the Ninth Circuit, the Supreme Court

11  addressed the question of what constitutes notice of the federal nature of a claim sufficient

12  to satisfy the fair presentment requirement found in 28 U.S.C. § 2254(b)(1).  In laying the

13  groundwork for its decision, the Supreme Court stated that "[t]o provide the State with the

14  necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state

15  court (including a state supreme court with powers of discretionary review), thereby alerting

16  that court to the federal nature of the claim."  541 U.S. at 29 (citations omitted). Apparently

17  seizing on this general statement of the law of exhaustion, Respondents contend *Baldwin*

18  supports a finding that *Swoopes*, at least insofar as it addresses the need for habeas petitioners

19  to seek review in a the highest state court, is no longer valid.  However, an examination of

20  the rationale employed in the *Swoopes* decision readily distinguishes that case from the

21  general statement of law cited by the Respondents.

22         *Swoopes* was decided on remand to the Ninth Circuit for consideration in light of the

23  Supreme Court's decision in *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  In *Swoopes*, the

24  Ninth Circuit, just like the *Baldwin* court, began by reiterating the general rule stated in

25  *O'Sullivan* that, "in order to satisfy the exhaustion requirement for federal habeas relief, state

26  prisoners must file for discretionary review in a state supreme court when that review is part

27  of ordinary appellate review." *Swoopes*, 196 F.3d at 1009, citing *O'Sullivan*, 526 U.S. at 847.

28  The court recognized, however, that the Supreme Court in *O'Sullivan* had "acknowledged

an exception to the exhaustion requirement," by making it clear the "'the creation of a discretionary review system does not, *without more*, make review' in a state supreme court 'unavailable.'" *Swoopes*, 196 F.3d at 1009, quoting *O'Sullivan*, 526 U.S. at 848 (emphasis added in *Swoopes*).  The Ninth Circuit proceeded to review Arizona's discretionary review system and found considerations that compelled a finding that, in other than capital cases, appeal to the Arizona Supreme Court was unnecessary.  Specifically, the court found that two Arizona cases, *State v. Shattuck*, 140 Ariz. 582, 684 P.2d 154 (1984), and *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989), made it clear that, "in cases not carrying a life sentence or the death penalty, review need not be sought before the Arizona Supreme Court in order to exhaust state remedies."  *Swoopes*, 196 Ariz. at 1010.  Thus, the court concluded, "post-conviction review before the Arizona Supreme Court is a remedy that is 'unavailable' within the meaning of *O'Sullivan*.  There is nothing in *Baldwin* that suggests, implicitly or explicitly, that this analysis is flawed or that the holding has been overruled.

Also strongly suggestive of the continued vitality of *Swoopes* is that the Ninth Circuit continues to cite the case for the very proposition Respondents suggest was overruled.  In *Castillo v. McFadden*, 399 F.3d 993 (9th Cir. 2005), the court stated as a matter of fact that "[i]n cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Id.* at 998 n. 3, quoting *Swoopes*, 196 Ariz. at 1010.  At least one other circuit has also cited *Swoopes* for this proposition without questioning its continuing validity.  *See Lambert v. Blackwell,* 387 F.3d 210 (3rd Cir. 2004).  These considerations make clear that Respondents' interpretation of *Baldwin* is incorrect.

### 2.    Ground I is not exhausted.

In Ground I of the Petition, Petitioner asserts that the trial court "gave an improper and highly prejudicial jury instruction during voir dire . . . ." *Petition*, p. 5.  Specifically, he alleges that the trial court instructed the jury that "any evidence presented by the defense or testimony by the defendant, is not to be considered in making a determination in the case." *Id.*  Respondents assert that a federal basis for this claim was never identified in Petitioner's

1 state court briefs.

2      A review of Petitioner's briefs filed in support of his direct appeal and PCR petition

3 supports the Respondents' position.  Ground I was not raised in Petitioner's direct appeal of

4 his conviction.  (*See* Exhibit J.)  It was raised by Petitioner in his PCR petition.  (*See* Exhibit

5 Q, pp. 7-8.)  As Respondents point out, however, Petitioner did not identify a federal basis

6 for the claim.

7      Exhaustion required that the Petitioner apprise the State that he was making a claim

8 under the United States Constitution and describe "both the operative facts and the federal

9 legal theory on which his claim is based" so that the state courts could have a fair opportunity

10 to apply controlling legal principles to those facts.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th

11 Cir.2003).  Petitioner must have referenced specific provisions of the federal constitution or

12 cited to federal or state cases involving the legal standard for a federal constitutional

13 violation.  *Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir.2005).  In *Castillo*, the Ninth

14 Circuit reiterated that exhaustion requires petitioners to delineate a relationship between a

15 particular federal citation and the claim being alleged.  *Id.* at 1002-03 ("Exhaustion demands

16 more than drive-by citation, detached from any articulation of an underlying federal theory").

17 The Ninth Circuit held that a petitioner's citation to the Fifth, Sixth, and Fourteenth

18 Amendments to the United States Constitution in the parting sentence of his brief to the

19 Court of Appeals was insufficient to support a finding of fair presentation.  *Id.* at 1002.  The

20 Court explained that Castillo's "conclusory, scattershot citation of federal constitutional

21 provisions, divorced from any articulated federal legal theory . . . left the Arizona Court of

22 Appeals to puzzle over how the Fifth, Sixth, and Fourteenth Amendments might relate" to

23 Castillo's claims.  *Id.*

24      The shortcomings identified in *Castillo* are also present in this case.  Here, Petitioner

25 stated in the closing of his PCR petition that all of the issues raised "are structural defects

26 within the case that have denied me my federal and state constitutional rights," and that "[a]ll

27 of the issues are raised as federal constitutional violations."  (Exhibit Q, p. 11.)  In the body

28 of the argument related to the issue raised in Ground I, Petitioner merely argued that the

1  alleged error by the trial court "nullified any defense I or my attorney presented." (*Id.*, p. 8.)

2  The vagueness of these assertions left the state court, as was the case in *Castillo*, to puzzle

3  over the federal constitutional basis for his claim.  In fact, the only indication of a federal

4  basis of this claim would have to be divined based on the bald reference to "federal

5  constitutional rights."   Such vague presentation is inadequate to constitute the fair

6  presentation required to find that the claim was exhausted.

7  **3.   Grounds II and VI are not exhausted.**

8  Grounds II and VI of the Petition suffer from the same shortcomings ascribed to

9  Ground I.  In Ground II, the Petitioner alleges he was denied effective assistance of counsel

10 based on his trial attorney's "ignorance of the laws, ignorance of the procedures to obtain

11 evidence, his failure to do the research needed to learn and obtain that which was needed for

12 my defense . . . ." *Petition*, p. 6.  Similarly, in Ground VI, the Petitioner alleges that his

13 attorney's "actions had no reasonable basis or tactical advantage to them for the defense."

14 *Id.*, p. 10.  In both Grounds, Petitioner includes a list of purported errors committed by

15 counsel.  As respondents contend, these grounds for relief were not properly presented to the

16 state court and are unexhausted.

17 As with Ground I, the issues raised in Grounds II and VI were not raised in

18 Petitioner's brief on direct appeal, (*see* Exhibit J), but were partially raised in his PCR

19 petition, (*see* Exhibit Q, pp. 2-11.)  Again, however, Petitioner did not identify a federal basis

20 for the claims, indicating only that the alleged omissions constituted a violation of his

21 "federal constitutional rights."   Beyond this conclusory statement, Petitioner failed to

22 articulate any federal legal theory that could be interpreted as constituting the fair

23 presentation required to find these grounds properly exhausted.  The argument in the PCR

24 petition amounts to a lengthy laundry list of alleged error, but fails to identify a federal or

25 constitutional basis for relief.  As such, these grounds are not exhausted.

26 **4.   Grounds III and IV contain exhausted and unexhausted claims.**

27

28 In Grounds III and IV, Petitioner asserts that during his second arrest, Officer Norman

recognized him and was aware that his trial had commenced. *Petition*, p. 7 & 8.  He further asserts that Officer Norman, despite knowing that Petitioner had appointed counsel, elicited statements from him about the facts surrounding the first arrest. *Id.*  These statements were admitted into evidence, Petitioner contends, in violation of his Sixth Amendment right to counsel. *Id.*  In Ground III, Petitioner also argues that the statements he made to Officer Norman at the time of his second arrest were admitted in violation of his due process and *Miranda* rights. *Id.*, p. 7.  Petitioner specifically alleges that he never made any of the statements attributed to him, that the statements were not voluntarily made, and that he did not receive a full and fair opportunity to challenge their admission. *Petition*, pp. 7 & 8.  An examination of Petitioner's state court briefs and the court orders that followed indicates that the Sixth Amendment claim was denied on independent and adequate state grounds, but the *Miranda* claim was exhausted.

A habeas court will not review a question of federal law if that question has been decided by a state court and the court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Park v. California,* 202 F.3d 1146, 1151 (9th Cir.2000).

As a threshold matter, the Supreme Court has indicated that the state law ground may be substantive or, as is the case here, procedural. *Coleman,* 501 U.S. at 729-30 (recognizing that the "independent and adequate state ground" doctrine bars federal habeas corpus review where a state court "declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement").  To be independent, "the state law basis for the decision must not be interwoven with federal law." *LaCrosse v. Kernan,* 244 F.3d 702, 704 (9th Cir.2001).  *See also Stewart v. Smith,* 536 U.S. 856, 860 (2002)(stating that "[I]f the state court's decision rested primarily on a ruling on the merits . . . , its decision would not be independent of federal law.").  "To be deemed adequate, the state law ground for decision must be well established and consistently applied." *Bennett v. Mueller,* 322 F.3d 573, 583 (9th Cir.2003); *see also Poland v. Stewart,* 169 F.3d 573, 577 (9th Cir.1999)("A state

1  procedural rule constitutes an adequate bar to federal court review if it was 'firmly

2  established and regularly followed' at the time it was applied by the state court") (*quoting*

3  *Ford v. Georgia,* 498 U.S. 411, 424 (1991)).  Moreover, "[A] federal claimant's procedural

4  default precludes federal habeas review . . . only if the last state court rendering a judgment

5  in the case rests its judgment on the procedural default." *Harris v. Reed,* 489 U.S. 255, 262

6  (1989).  When a petitioner procedurally defaults his federal claims in state court pursuant to

7  an independent and adequate state rule, federal habeas review of the claims is barred unless

8  the petitioner demonstrates cause for the default and actual prejudice from the alleged

9  violation of federal law, or that failing to review the claims "will result in a fundamental

10  miscarriage of justice." *Coleman,* 501 U.S. at 750.

11       The Arizona Court of Appeals, addressing the claim of a violation of the Sixth

12  Amendment right to counsel, found that Petitioner did not raise the issue at trial and that it

13  was therefore waived.  (Exhibit L, p. 5.)  This determination was founded on state law and

14  clearly constitutes a ground independent of any federal constitutional basis for Petitioner's

15  claim.  *See La Crosse v. Kernan*, 244 F.3d 702 (9th Cir. 2001).  The bar is adequate if it is

16  regularly followed and consistently applied.  *See Morales v. Calderon*, 85 F.3d 1387, 1392

17  (9th Cir. 1996).  An examination of Arizona decisions establishes that these requirements are

18  satisfied.  *See, e.g., State v. Gendron,* 168 Ariz. 153, 154 (1991) ("Absent a finding of

19  fundamental error, failure to raise an issue at trial . . . waives the right to raise the issue on

20  appeal."); *State v. Davis*, 205 Ariz. 174, 179 (App. 2002) (same); *State v. Williams,* 209 Ariz.

21  228, 232-233 (App. 2004) (same).  Petitioner has established neither cause for the failure to

22  raise this claim nor resulting prejudice.  As such, it is procedurally defaulted and not subject

23  to habeas review.

24       On the other hand, an examination of Petitioner's brief before the Arizona Court of

25  Appeals arguably establishes that a federal basis for his *Miranda* claim was adequately

26  raised.  Petitioner cited federal authority in support of the standard of review, (Exhibit J, p.

27  19), cited the Fifth and Fourteenth Amendments to the United States Constitution, (*id.*), and

28  concluded his argument with citation to *Miranda* and subsequent United States Supreme

1   Court authority, (*id.,* p. 22.).  These references amount to more than "drive-by citation," *see*

2   *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005), and are associated with argument

3   regarding the alleged involuntariness of the statements.  In fact, in analyzing the admissibility

4   of Petitioner's statements, the State court also cited federal authority.  (*See* Exhibit L, p. 6

5   (citing *Arizona v. Fulminante*, 499 U.S. 279, 306-312 (1991))).  As such, this claim was

6   exhausted.

### 5.    Grounds V and VII are not exhausted.

8        In Ground V, Petitioner asserts that the trial court should have taken corrective action

9   because his counsel was ineffective.  In Ground VII, Petitioner alleges ineffective assistance

10  of trial and appellate counsel.  The allegations related to ineffective assistance of trial counsel

11  are addressed in II.B.3, above, and are unexhausted.  Ground V and the portion of Ground

12  VII addressing his appellate representation were not included in Petitioner's appeal of his

13  conviction or in his PCR petition.  In the PCR petition, he did complain of his trial attorney's

14  alleged shortcomings, but did not allege or argue that the trial court was obligated to take

15  corrective action.  (Exhibit Q, pp. 10.)  He also did not claim that appellate counsel was

16  ineffective.  The first time these claims were raised was in the Petitioner's appeal of the trial

17  court's denial of the PCR petition.  (Exhibit JJ, p. 2.)  To be properly exhausted, a claim must

18  be fairly presented in "each appropriate state court," so as to alert the state "to the federal

19  nature of the claim," and to give it the "opportunity to pass upon and correct" alleged

20  violations of the petitioner's federal rights.  *Baldwin v. Reese,* 541 U.S. 27, 29 (2004)

21  (citations and internal quotation marks omitted); *see also Ortberg v. Moody,* 961 F.2d 135,

22  138 (9th Cir.1992).  Ground V and Ground VII (as it relates to the performance of appellate

23  counsel) were not raised before the trial court and therefore do not satisfy this requirement.

### C.    Petitioner's unexhausted claims are procedurally defaulted.

25       If a claim has not been fairly presented to the state court, a federal habeas court may

26  determine whether state remedies remain available.  *See Harris v. Reed*, 489 U.S. 255, 269-

27  270 (1989) (O'Connor, J., concurring).  When determining whether state remedies remain

28  available, the court looks to the time of filing of the federal habeas petition.  *Engle*, 456 U.S.

at 125 n. 28.  If, at the time the habeas petition is filed, there are no state remedies available to a petitioner who has failed to fairly present a claim in a procedurally appropriate manner to the state's highest court, the petitioner has technically exhausted the claim by procedural default.  *Harmon*, 959 F.2d at 1460-61.   A procedurally defaulted claim is barred from federal review absent a showing of legitimate cause for the default and actual prejudice attributable to it, or a demonstration that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750*; Sawyer v. Whitley*, 505 U.S. 333, 338-339 (1992).  "Cause" is a legitimate excuse for the default and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991).  To show cause, a petitioner must ordinarily demonstrate that "some factor external to the defense" impeded efforts to raise the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The fundamental miscarriage of justice exception is only available "where the petitioner supplements his constitutional claim with a colorable showing of factual innocence."  *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995) (*quoting Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

Grounds I, II, V, VI, VII, and portions of Grounds III and IV, have not been exhausted.   As Respondents assert, any attempt by Petitioner to now present these unexhausted claims in state court would be futile.  Pursuant to Rule 32.2, ARIZ.R.CRIM.P., a petitioner may not be granted state court relief on any claim which could have been raised in a prior Rule 32 petition for post-conviction relief.  Only if a claim falls within certain exceptions (outlined in sub-sections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition will the preclusive effect of Rule 32.2 be avoided.  Here, Petitioner presents no argument addressing the applicability of any exception provided in Rule 32 and does not attempt to justify his failure to raise (or raise as a federal issue) any of his unexhausted claims.  As such, these claims are procedurally defaulted.

Thus, in order to obtain federal habeas review of his procedurally defaulted claims, Petitioner must demonstrate cause for the default and prejudice resulting therefrom.

1   Petitioner did not reply to the Answer and has made no arguments to establish cause and

2   prejudice in relation to the defaulted claims. Moreover, the exhaustion doctrine requires that

3   he first raise such claims in the state court before he can rely on them as a basis as cause for

4   default. *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988). An examination of the State

5   court record discloses no such basis. Therefore, review of these claims is unavailable.

6       **D.    Merits**

7       As discussed above, Petitioner arguably exhausted the due process and *Miranda*

8   claims that can be divined from Grounds III and IV. The merits of that claim can therefore

9   be addressed. Under the AEDPA, a federal court "shall not" grant habeas relief with respect

10  to "any claim that was adjudicated on the merits in State court proceedings" unless the state

11  decision was (1) contrary to, or an unreasonable application of, clearly established federal

12  law as determined by the United States Supreme Court; or (2) based on an unreasonable

13  determination of the facts in light of the evidence presented in the State court proceeding.

14  28 U.S.C. § 2254(d). *See Williams v. Taylor*, 120 S.Ct. 1495 (2000). A state court's decision

15  can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority,

16  or (2) if it applies the controlling authority to a case involving facts "materially

17  indistinguishable" from those in a controlling case, but nonetheless reaches a different result.

18  *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000). In determining whether a state

19  court decision is contrary to federal law, the court must examine the last reasoned decision

20  of a state court and the basis of the state court's judgment. *Packer v. Hill*, 277 F.3d 1092,

21  1101 (9th Cir. 2002). A state court's decision can be an unreasonable application of federal

22  law either (1) if it correctly identifies the governing legal principle but applies it to a new set

23  of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a

24  clearly established legal principle to a new context in a way that is objectively unreasonable.

25  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

26      Although Petitioner argued in his brief submitted to the Arizona Court of Appeals that

27  his statements Officer Norman were involuntarily made, the Court did not address the

28  substance of the claim, but determined only that, "if the court did err in admitting the

1    statements, the error was harmless." (Exhibit L, p. 6.) Because the Court of Appeals did not

2    evaluate this claim under a voluntariness standard, the last reasoned decision on the claim

3    is that of the trial court.

4          During Petitioner's trial, the court held a hearing to determine whether Petitioner's

5    statements to Officer Norman were voluntarily made. (Exhibit PP, p. 91.) Officer Norman

6    was called to testify and explained that just two days prior the hearing, on May 23, 2000, he

7    and his partner had placed Petitioner under arrest for trespassing. (*Id.*, pp. 97-99.) Petitioner

8    was placed in the officer's patrol car and he was read his *Miranda* warnings. (*Id.*, 98-99.)

9    Officer Norman denied asking Petitioner any questions about the facts of this case, for which

10   he was then currently on trial. (*Id.*, p. 99.) Nevertheless, he recalled that Petitioner "made

11   reference to [Officer Norman] being very upset with him the night of that arrest." (*Id.*, p.

12   100.) Officer Norman stated that he replied, "Yes, I was pretty upset. It was a pretty intense

13   ordeal." (*Id.*) Petitioner explained that he had been scared, and Officer Norman told him he

14   was "one hell of a driver." (*Id.*) Petitioner told the officer that he used to race off-road.

15   Petitioner also asked Officer Norman why he had been so upset in light of the fact that he

16   caught-up and arrested him. Officer Norman told Petitioner that he had run into a barbed-

17   wire fence when he was chasing him, and Petitioner admitted that he, too, had run into the

18   fence. (*Id.*) Officer Norman also told the court that during this exchange, Petitioner

19   appeared coherent, was not threatened or coerced, and never asked for an attorney. (*Id.*, pp.

20   100-101.)

21         After Officer Norman was excused, Petitioner's counsel argued to the court that the

22   statements Petitioner had made were involuntary and inadmissible. Although he did not

23   dispute that *Miranda* warnings had been provided, counsel argued that Officer Norman

24   should also have advised Petitioner of his rights in relation to the first arrest. Without that

25   warning, Petitioner's counsel asserted, the officer's statements to Petitioner were likely to

26   elicit incriminating responses. (*Id.*, pp. 106-107.) In response, the State argued that

27   Petitioner's statements were purely voluntary and were not initiated or elicited by Officer

28   Norman. (*Id.*, p. 112.)

1    Considering the testimony and the arguments of counsel, the trial court concluded that

2    Petitioner's "statement to Officer Norman was made voluntarily, and that it was made in full

3    compliance with Miranda." (*Id.*)  The court then concluded:

4          Miranda is a generalized warning of a right to remain silent, and
           to consult with an attorney if the individual would like to.  It is
5          not based on a particular set of facts or circumstance, and in the
           absence of anything further, the Court will rule that the
6          statement is admissible during the State's case-in-chief.

7    (*Id.*, p. 113.)

8    This analysis involved neither  an unreasonable application of clearly established

9    federal law nor an unreasonable determination of the facts in light of the evidence presented

10   in the State court proceeding.  First, to the extent that Petitioner now claims he said nothing

11   to Officer Norman on the night of his second arrest, the trial court was clearly reasonable in

12   determining otherwise.  Officer Norman testified about events that had occurred only two

13   days before the hearing and was quite specific about the particulars of the second arrest.  His

14   recollection of the exchange between he and Petitioner was also specific and credible.  In

15   sum, there is nothing in the record before the trial court that would suggest the court's finding

16   was anything but reasonable.

17   Second, Petitioner has offered no authority, and the Court had been unable to locate

18   any, that would suggest that Officer Norman, at the time of the second arrest, was required

19   to provide Petitioner a separate *Miranda* warning in relation to the first arrest.  All that is

20   required is that the accused affirmatively waive the *Miranda* rights before custodial

21   interrogation by law enforcement officers.   *Miranda,* 384 U.S. 436, 474-75 (1966).  A

22   waiver need not be express so long as the totality of the circumstances indicates that the

23   waiver was knowing and voluntary.  *North Carolina v. Butler,* 441 U.S. 369, 373 (1979)

24   ("The question is not one of form, but rather whether the defendant in fact knowingly and

25   voluntarily waived the rights delineated in the *Miranda* case.").  The trial court determined

26   that Petitioner initiated the conversation with Officer Norman.  Given this reasonable

27   determination, the court's determination of admissibility was not contrary to clearly

28   established federal authority. *See United States v. Andaverde,* 64 F.3d 1305, 1313 (9th

1 | Cir.1995) (implying waiver where a defendant did not invoke his rights, then initiated a

2 | conversation, and later did invoke his rights).  Accordingly, the Court recommends that the

3 | District Court find that the trial court's conclusion was not a decision that was "contrary to,

4 | or involved an unreasonable application of, clearly established Federal law," as is required

5 | for habeas relief under 28 U.S.C. § 2254(d)(1).

6 | **III.    RECOMMENDATION**

7 | For all of the above reasons, **THE MAGISTRATE JUDGE RECOMMENDS** that

8 | the District Court, after its independent review, **DISMISS WITH PREJUDICE** Petitioner's

9 | Petition for Writ of Habeas Corpus filed October 4, 2004 (Doc. # 1)

10 | This Recommendation is not an order that is immediately appealable to the Ninth

11 | Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

12 | Appellate Procedure, should not be filed until entry of the District Court's judgment.

13 | However, the parties shall have ten (10) days from the date of service of a copy of this

14 | recommendation within which to file specific written objections with the District Court. *See*

15 | 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure.

16 | Thereafter, the parties have ten (10) days within which to file a response to the objections.

17 | If any objections are filed, this action should be designated case number: **CV 04-2075-PHX-**

18 | **SMM**.   Failure to timely file objections to any factual or legal determination of the

19 | Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of

20 | the issues.  *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

21 | DATED this 21st day of July, 2006.

22 |

23 |

24 |

25 | Jacqueline Marshall

26 | United States Magistrate Judge

27 |

28 |